UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CRISTIAN VASQUEZ,<br>Petitioner,<br>v.<br>BRUCE SCOTT, MARKWAYNE MULLIN,<br>Respondent. | CASE NO. 2:26-cv-03750-BAT<br>**ORDER GRANTING HABEAS PETITION AND DIRECTING RELEASE** |

Petitioner Cristian Vasquez is detained by Immigration and Customs Enforcement at the Northwest ICE Processing Center. He petitions the Court under 42 U.S.C. § 2241 for immediate release from detention or, in the alternative, immediate release under conditions of supervision, contending that he is detained based on a bond decision that was arbitrary, conclusory, reflective of an abuse of discretion, and devoid of any reasoned or individualized analysis and unsupported by the record. Dkt. 1 (Petition). The Court **GRANTS** the habeas petition and **ORDERS** Petitioner's release within twenty-four (24) hours of this Order.

///

///

///

## BACKGROUND

*1. Petitioner's immigration history*

Petitioner, a native and citizen of Honduras, entered the United States without inspection in October 2016, when he was 15 years old. Dkt. 10 at 2. The U.S. Border Patrol apprehended him near the Rio Grande Valley in Texas and, because he was a minor, transferred him to the custody of the Office of Refugee Resettlement. *Id.* The ORR released him to the care of his mother in Idaho in December 2016. *Id.* Petitioner remained in the United States and has resided in Idaho ever since. Dkt. 3, ex. B.

Petitioner has participated in immigration proceedings since he entered the U.S. In October 2016, petitioner was charged as removable from the United States; that proceeding was dismissed without prejudice in July 2023. Dkt. 10 at 2. In April 2023, petitioner filed form I-130, petition for alien relative, spouse of U.S. citizen; that petition was denied in March 2025. *Id.* In September 2026, after his detention, petitioner submitted a Form I-589 seeking asylum, withholding of removal, and protection under the Convention Against Torture based on his asserted fear of returning to Honduras. *Id.* at 3.

On July 26, 2026, ICE Enforcement and Removal Operations encountered petitioner in a parking lot in Ammon, Idaho. Dkt. 8, ex. 3. ICE officers approached petitioner, confirmed his identity, arrested him, and transported him to the ICE office in Idaho Falls for processing. *Id.* Petitioner was eventually transferred to the NWIPC, where he remains detained. Dkt. 10 at 4.

Petitioner sought a custody redetermination, and on September 17, 2026, the Immigration Judge ("IJ") conducted a bond hearing, a recording of which is in the record. Dkt. 9, ex. G. At the conclusion of the hearing, the IJ denied bond, finding that petitioner was both a flight risk and a danger to the community, and ordered that he remained detained. Dkt. 2, ex. A.

*2. Petitioner's background*

In support of his request for bond, petitioner submitted evidence showing that he has lived in Idaho for almost ten years, including all his adult life. Dkt. 3, ex. B. He resides in Idaho Falls with his fiancée, who is a United States citizen. *Id.* He has a three-year-old daughter who is a United States citizen and with whom he maintains a close relationship. *Id.* Petitioner works in concrete construction as a finisher/operator, with years of work in the Idaho Falls area. *Id,* He has relationships with family, friends, and members of the community in the Idaho Falls area. *Id.*

Petitioner has a criminal history that includes several infractions, but no felony or misdemeanor convictions. In November 2019, petitioner received a school harassment, intimidation, or bullying infraction and paid an assessment of $72. Dkt. 3, ex. B, at ex. S (Idaho infraction court records). In 2020, petitioner received an underage-alcohol infraction, which was resolved by default judgment and a financial assessment, and a separate littering infraction. *Id.* Another matter from 2020 included an allegation regarding an open container while driving. *Id.* A warrant for failure to appear was entered in this matter when petitioner did not appear for a hearing, but he later appeared, and petitioner was found not guilty of that allegation upon the prosecutor's motion to dismiss. *Id.* In the same matter, he was found guilty of a turning violation infraction. *Id.*

In June 2026, petitioner received two traffic-related infractions, one for operating a vehicle without a current or valid Class D driver's license and one for failing to adequately secure a transported load. *Id.* He paid a $379.50 assessment and the matter was closed. *Id.*

*2. Hearing and IJ ruling*

The following section is based on a review of the bond hearing recording, in the record at Dkt. 7, ex. G:

Petitioner stated that after he entered the United States and was released from ORR custody at age 15, he has lived essentially his entire adult life in Idaho. He asserted that had submitted substantial evidence of stability and good moral character, including numerous letters from people who know him describing him as hardworking, responsible, kind, generous, and devoted to his family. He stated he has a three-year-old daughter who is a U.S. citizen and asserted that that they have a close bond and other family members believe she needs her father in her life as she grows up. He noted the lack of felony or misdemeanor convictions, and stated that his record consists of infractions, most of which occurred when he was 18 or 19 years old, along with the two more recent traffic infractions. He planned to live with his fiancée upon release, and she had submitted a letter detailing the support she would give him upon release. He asserted that he was not a flight risk and had an incentive to continue appearing, as his daughter, fiancée, and family are in the United States, and he is actively pursuing his asylum claim. Petitioner asserted that most of his infractions occurred six years ago, when he was a teenager, and he is now an adult, a father, and a skilled worker, although he admitted that he worked in the U.S. without a valid Social Security number. He requested to be released on reasonable bond and stated he would comply with any conditions of release the IJ considered appropriate.

The government asserted that petitioner had filed his asylum application only days before the hearing and the government had moved to terminate it. The government argued that petitioner was a danger because he had been cited for school harassment, intimidation, or bullying, had been caught drinking underage, was cited for driving with an open container, and had recently been cited for and found guilty of driving without a license. The government asserted that these circumstances made him both a flight risk and a danger and the government therefore opposed bond. Upon questioning by the IJ, petitioner affirmed that he does not have a

driver's license and has never had one in the U.S., but he has driven in the U.S.

The IJ asked about a notation in the record about a warrant issued for failure to appear in 2021. Petitioner explained that this occurred in the 2020 open container matter, stating that petitioner did not appear at a hearing because he did not understand the requirement to appear, but he later appeared in the matter, and it was resolved on a motion to dismiss by the prosecutor.

At the conclusion of the hearing, the IJ found petitioner was a flight risk based on not appearing for a court date and "for various other reasons in the record," and that he was a danger to the community based on his criminal charges and driving without a license for the entire time he has lived in the U.S.

The IJ issued a check-box order with boxes checked to indicate that the request for change in custody status was denied/no bond, that petitioner was a danger to the community and a flight risk, that conditional release was denied, and that ability to pay was considered. Dkt. 2 ex. A.

## DISCUSSION

The Court has authority to grant habeas relief if petitioner demonstrates his custody violates the Constitution, laws, or treaties of the United States under 28 U.S.C. § 2241(c)(3). Under 28 U.S.C. § 2241, federal courts have jurisdiction over challenges to the detention of noncitizens before removal. *Zadvydas v. Davis*, 533 U.S. 678 (2001). This Court has jurisdiction to review immigration custody determinations for legal error, including whether an IJ's bond decision was arbitrary, applied the wrong legal standard, or violated due process. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

### A. Exhaustion of administrative remedies

Respondents argue that the Court should require petitioner to exhaust his administrative

remedies. Dkt. 9 at 4.

Whether petitioner must exhaust his administrative remedies in the habeas context "is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Even if these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Regarding the *Puga* factors, respondents argue petitioner should be required to exhaust his administrative remedies because the Board of Immigration Appeals ("BIA") has subject-matter expertise for individual bond decisions and a BIA decision would develop the record and clarify the IJ's reasoning, waiving exhaustion would create a loophole that would allow petitioner to bypass the administrative process, and BIA review would preclude the need for judicial review. Dkt. 7 at 6-7.

First, although the BIA may have general subject-matter expertise in immigration custody and bond matters, it has no special expertise in resolving the constitutional and legal questions presented here and, indeed, lacks authority to adjudicate such matters. *See W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 20, 2026); s*ee also*

*Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, *7 (D.R.I. Dec. 3, 2025) (the petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile"). This factor weighs against requiring prudential exhaustion.

Second, although relaxation of prudential exhaustion may, to some extent, encourage others to bypass the administrative appellate procedures, this case presents a legal question about whether the bond hearing met constitutional requirements, not a request for de novo review of the IJ's discretionary bond determination. *See Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025). A decision would likely "be beneficial to provide the specific immigration court, which regularly handles bond hearings, with guidance on the types of circumstances that may lead to a finding of constitutional deficiency." *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026). This factor weighs neutral.

And third, the Court finds no reason to delay review in a case where the claim is constitutional and legal errors have resulted in continued detention. Moreover, given the lengthy delays inherent in the current appeals process, the Court finds petitioner will suffer irreparable injury if she is required to wait for a BIA decision before being permitted to file a habeas claim. *See Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.'") (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)). This factor weighs against requiring prudential exhaustion. The Court therefore finds that the *Puga* factors

weigh in favor of waiving the exhaustion requirement.

Regarding the *Laing* factors, respondents argue that petitioner had a meaningful opportunity to demonstrate his entitlement to bond, the IJ would have prepared a comprehensive written decision had petitioner sought BIA review, and petitioner has not demonstrated that the delay caused by seeking administrative review would have resulted in irreparable harm unique to him. Dkt. 7 at 7-8.

Courts in this District have noted that the exhaustion of an administrative appeal of a bond denial typically takes "substantially longer" than six months. *See Vasquez Lopez v. Hernandez*, No. C26-775, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (finding that statistics from 2026 show that the BIA appeal process is currently "substantially longer" than it was in 2024 when exhausting an administrative appeal required more than six months); *see also Soriano*, 2026 WL 969764, at *4 (finding, where petitioner brought habeas petition challenging his bond denial, "given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."). Under these circumstances, the Court finds administrative remedies are inadequate or not efficacious and that even if petitioner's administrative appeal is ultimately successful, he will have suffered irreparable injury during the long wait.

For all these reasons, the Court waives any requirement that petitioner exhaust his administrative remedies before seeking habeas relief.

**B. The IJ's bond determination**

Petitioner argues that the IJ's bond determination was arbitrary and an abuse of discretion. Dkt. 1 at 8. Respondents argue the IJ reasonably determined that petitioner had not carried his burden of demonstrating that he warranted release on bond under *In re Guerra*, 24 I.

& N. Dec. 37, 40 (BIA 2006). Dkt. 7 at 11-12.

This Court's habeas review of the IJ's determination as to dangerousness or flight risk is for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779, 784-85 (9th Cir. 2024). Under an abuse of discretion standard, the court cannot reweigh evidence; the Court can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)). "When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. Jan. 16, 2019)). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240).

When determining whether a noncitizen is a danger to the community or risk of flight, the IJ weighs nine factors pursuant to BIA precedent. *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) and *Martinez*, 124 F.4th at 783). These nine factors that an IJ may consider include any or all of the following:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the alien to

> flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). These factors "grant an IJ broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Id.* at 783–84.

Here, because no opinion of the IJ is available, "the question is whether the evidence that the IJ relied on at the bond hearing could—as a matter of law—establish that [petitioner] posed a flight risk" and a danger. *W.T.M. v. Bondi*, No. C25-2428, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (alteration in original) (quoting *Garcia v. Hyde*, No. C25-585, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025)). The Court finds that it could not.

In support of his motion for bond redetermination, petitioner submitted a brief addressing the *Guerra* factors as follows: He has a reliable and credible sponsor in his fiancée, who is a U.S. citizen, who is willing and able to provide a stable address where petitioner can reside, and who is prepared to support petitioner upon release and assist him in complying with his immigration obligations. His criminal history does not include any felony or misdemeanor convictions, but instead consists of infractions, most of which occurred when petitioner was 18 or 19 years old. The charge of an open container violation was opened as a criminal matter, but petitioner was found not guilty of that charge. And the two recent matters were traffic-related infractions, not crimes of violence. He has resided in the United States for almost ten years, including his entire adult life, and his family, daughter, partner, residence, and community are in Idaho. He has a U.S. citizen daughter who resides in Idaho and therefore has a powerful incentive to remain in Idaho and comply with immigration requirements. His overall appearance record, which includes participating in immigration proceedings through counsel, supports release. And he plans to seek immigration relief by applying for asylum and withholding of removal. Dkt. 3, ex. B. At the

hearing, petitioner argued that all these factors demonstrate that he is not a danger to the community and not a flight risk.

Along with his brief, petitioner submitted a letter of support from his fiancée and other documents regarding her willingness and ability to be his sponsor; additional letters of support from friends, family, and community members; his daughter's birth certificate; photographs of petitioner with family and friends; immigration documents; and Idaho infraction court records. Dkt. 3, ex. B.

The government filed no written brief and submitted as evidence petitioner's form I-213, record of deportable/inadmissible alien. Dkt. 8, ex. C. At the hearing, the government argued that petitioner was a danger to the community and a flight risk because he had been cited for school harassment, intimidation, or bullying, had been caught drinking underage, was cited for driving with an open container, and had recently been cited for driving without a license.

In finding that petitioner was a danger to the community, the IJ relied on petitioner's criminal charges and the fact that he drove without a license for the entire time he lived in the United States. But the IJ failed to identify how petitioner's infractions, most of which were six or more years old and none of which arose to the level of a misdemeanor or felony charge, could support a finding of danger to the community at the present time. The government emphasized petitioner's infraction for school harassment, bullying, or intimidation in support of a finding of dangerousness, but there is nothing in the record to establish that this infraction involved violence or how this infraction, which occurred seven years ago, is evidence of present dangerousness. The two recent infractions, driving without a license and failing to secure a load, are not crimes of violence. And although petitioner admitted to driving without a license while living in the United States, this fact alone does not establish danger to the community.

In finding that petitioner was a flight risk, the IJ relied on petitioner's failure to appear in the 2020 matter and "various other reasons in the record." The IJ failed to explain how the failure to appear at one hearing, which occurred six years ago, and which petitioner corrected by appearing in the matter thereafter, is sufficient to establish flight risk such that no conditions of release are sufficient to assure appearance. And the IJ's reliance on unspecified "various other reasons in the record" provide no rational basis for the finding of flight risk.

Finally, while the IJ made vague references to petitioner's criminal charges and other unspecified reasons for finding him to be a flight risk and a danger, there is nothing to indicate that the IJ considered the other *Guerra* factors. Petitioner submitted that he has resided in the United States for ten years, including all his adult life, has plans to reside with his fiancée and sponsor at a fixed residence, has a young child who is a United States citizen and with whom he has a close relationship, has consistently worked, and is actively pursuing immigration relief. The IJ provided no discussion of why she found these factors outweighed by years-old infractions and a single failure to appear that was later corrected.

The Court concludes that the IJ abused her discretion in finding that petitioner was a danger to the community and in finding that he was flight risk such that no conditions of release could ensure his appearance at future immigration proceedings._Accordingly, the Court finds that petitioner is currently in custody in violation of the laws or Constitution of the United States and is entitled to habeas relief.

**C. Remedy**

Because Petitioner's bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for her continued detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (finding that

"[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Soriano*, 2026 WL 969764, at *6 (ordering petitioner's immediate release after finding no basis for continued detention); *Miri v. Bondi*, Case No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026), at *12 (ordering habeas petitioner's immediate release after finding IJ abused discretion in denying petitioner's request for bond). Accordingly, the Court **ORDERS** petitioner's immediate release from immigration detention.

## CONCLUSION

For the forgoing reasons, the Court **ORDERS**:

1. Petitioner's petition for writ of habeas corpus (Dkt. 1) is **GRANTED**.

2. Respondents shall **RELEASE** petitioner with reasonable conditions within 24 hours of the date and time this Order is filed.

3. Respondents shall file a **CERTIFICATION** that petitioner has been released no later than 48 hours from the date and time this Order is filed.

4. Petitioner's counsel may move for EAJA fees and costs consistent with the law and the statute.

DATED this 13th day of November, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge